IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

ROGER DUELLO,

        Plaintiff,

vs.

BUCHANAN COUNTY BOARD OF
SUPERVISORS and BUCHANAN
COUNTY, IOWA,

        Defendants.

No. C08-2074

RULING ON MOTION FOR
SUMMARY JUDGMENT

————————————

## TABLE OF CONTENTS

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . 2

III.   RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . 6

V.     DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     A.    Duello's State and Federal Claims. . . . . . . . . . . . . . . . . . . 8
     B.    Analytical Framework Under the ADA. . . . . . . . . . . . . . . . . 8
         1.   Disability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            a.    Actual Disability. . . . . . . . . . . . . . . . . . . . . . 11
            b.    "Regarded As" Disabled. . . . . . . . . . . . . . . . . 12
         2.   Qualified Individual. . . . . . . . . . . . . . . . . . . . . . . . 16

VI.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII.  ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 23) filed by Defendants Buchanan County Board of Supervisors and Buchanan County, Iowa on February 12, 2010; the Resistance (docket number 27) filed by Plaintiff Roger Duello on March 12, 2010; the Reply (docket number 29) filed by Defendants on March 24, 2010; and the Surreply (docket number 37) filed by Plaintiff. Pursuant to Local Rule 7.c, the Motion for Summary Judgment will be decided without oral argument.

## II. PROCEDURAL BACKGROUND

Plaintiff Roger Duello ("Duello") timely filed a charge with the Iowa Civil Rights Commission ("ICRC") alleging disability discrimination in employment by Defendants Buchanan County Board of Supervisors and Buchanan County, Iowa. The charges were also cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On September 25, 2008, the ICRC issued an Administrative Release (right-to-sue letter) to Duello with respect to his charge of disability discrimination.

On December 12, 2008, Duello filed a Complaint (docket number 1) alleging disability discrimination in violation of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, *et seq*. (Count One), and disability discrimination in violation of the Iowa Civil Rights Act ("ICRA"), Iowa Code Chapter 216 (Count Two). On January 6, 2009, Defendants filed an Answer, Affirmative Defenses and Jury Demand (docket number 7), generally denying the material allegations contained in the complaint, and asserting certain affirmative defenses. On March 20, 2009, both parties consented to proceed before a United States Magistrate Judge, pursuant to the provisions set forth in 28 U.S.C. § 636(c). Trial is scheduled before the undersigned on May 17, 2010. Defendants filed the instant Motion for Summary Judgment (docket number 23) on February 12, 2010.

## III. RELEVANT FACTS

Duello began working for the Buchanan County Secondary Road Department in 1988. Initially, his job duties consisted of shop maintenance and janitorial work. In the early 1990's, Duello moved to the position of Operator II, where he generally operated a maintainer (road grader) and a dump truck. Duello was assigned to a specific area in Buchanan County, consisting of approximately 74 miles of road, most of which was gravel. In the winter, Duello's primary responsibility was plowing snow. In the summer, Duello's primary responsibilities included hauling gravel in a dump truck, and operating the maintainer to move rock on the gravel roads. Buchanan County required Operator II employees to have a valid Class B commercial driver's license ("CDL").

On October 6, 2006, while driving a truck hauling rock, Duello experienced a severe headache and nausea. He was forced to stop driving, and seek assistance. Duello was hospitalized at the University of Iowa Hospitals and Clinics, and diagnosed with having a seizure. As a result of his seizure, Duello requested leave from work under the Family and Medical Leave Act ("FMLA").

As part of his FMLA request, Duello provided Defendants with a "Certification of Health Care Provider" from his treating physician, Dr. Robert L. Rodnitzky, M.D. According to Dr. Rodnitzky, Duello's condition would not allow him to drive a motor vehicle for "at least" six months. Dr. Rodnitzky did not believe Duello was incapable of performing work of any kind, but restricted him from operating a motor vehicle or moving machinery. Additionally, Duello was required to relinquish his driver's license and CDL. Duello was on FMLA leave from October 6, 2006 through December 29, 2006.

On December 8, 2006, Karen Stephenson ("Stephenson"), the Deputy Auditor for Buchanan County, sent a letter to Duello informing him that his twelve weeks of leave under the FMLA would end on December 29, 2006. In the letter, Stephenson indicated that Defendants needed to review the status of Duello's leave. To that end, Stephenson

3

included a "Periodic Status Leave Report" form and an "Application for Leave of Absence" for Duello to fill out by December 22, 2006.[1]  The letter noted that:

> If additional leave of absence is requested, we will need your health care provider to provide to us with additional medical information as to when you can return to work, whether you will be able to perform your full duties, or will there be any restrictions in you performing these duties, this information will help in our analysis to approve the considered leave.

See Defendants' Appendix (docket number 23-3) at 42.

On December 18, 2006, Duello sent in the paperwork requested by Defendants. Duello requested further leave because he was not allowed "to drive or operate machinery," per Dr. Rodnitzky's orders until early April 2007.  Duello sought a leave of absence for six months beginning on October 6, 2006, or when Dr. Rodnitzky released him to drive and operate machinery.  On December 21, 2006, Defendants received a letter from Dr. Rodnitzky explaining Duello's condition.  The letter was addressed to Duello and stated:

> This letter is to confirm that you were hospitalized on October 6, 2006 for a seizure that you experienced on that day.  This is now under treatment and hopefully no further seizures will re-occur but you are prohibited from driving for at least 6 months.  After that period of time if there is no further seizure activity, you can resume driving.  If your work requires that you drive, then you cannot perform that portion of your duties.  You are able to work at other tasks that do not involve driving, working in high places or near moving machinery.

See Defendants' Appendix (docket number 23-3) at 45.

On January 2, 2007, at a Buchanan County Board of Supervisors meeting, Supervisors Ellen Gaffney ("Gaffney") and Ralph Kremer ("Kremer") discussed the issue

---

[1]  Under the collective bargaining agreement, a county employee could request a leave of absence for up to one year.  See Duello's Appendix (docket number 27-3) at 4. Such leave must be authorized by the county engineer.  Id.

of Duello's employment.[2]  Following the discussion, Gaffney made a motion, seconded by Kremer, to terminate Duello from employment due to "physical disability that prevents him from carrying out his duties of employment and with no reasonable prospect of recovery that would enable him to resume his duties."[3]  The motion carried, and on January 3, 2007, Defendants sent Duello a letter informing him of his termination. Specifically, the letter stated:

> This is to advise you that your employment with Buchanan County has been terminated, effective upon receipt of this notice.
>
> The Buchanan County Board of Supervisors considered the issue of your continued employment and voted to terminate it because you are now unable to perform the duties of any function in this department and because there is not reasonable likelihood that you will recover sufficiently to perform such duties.

See Defendants' Appendix (docket number 23-3) at 47.

On January 16, 2007, Duello, through counsel, sent a letter to Defendants requesting reconsideration of his termination, and granting an extension of his leave of absence through the six-month period referred to by Duello's treating physician (October 6, 2006-April 6, 2007).  Specifically, the letter stated:

> Your January 3rd letter incorrectly states that there is no reasonable likelihood that Mr. Duello will recover sufficiently to return to his job.  This is directly contrary to Dr. Rodnitzky's letter wherein he states that if he continues to be seizure free, [Duello] will be able to return to his full duties in less than three months from the date of this letter.  Under Iowa law and the Americans With Disabilities Act (ADA), an employer is required to provide a reasonable accommodation for employees who suffer from disabilities or are regarded by their employer as suffering from disabilities.  It is the request

---

[2] Supervisor Mike Ferreter was not present at the meeting due to illness.

[3] See Defendants' Appendix (docket number 23-3) at 46.

> of Mr. Duello that Buchanan County Secondary Road Department provide him with the reasonable accommodation of an extension of his leave until the expiration of the six month waiting period, at which time he can return to his full duties. Extension of leave time has been held to be a reasonable accommodation under the statutes.

*See* Defendants' Appendix (docket number 23-3) at 48-49.

On January 22, 2007, the Buchanan Board of Supervisors held another meeting, during which Duello's employment status was reconsidered. Supervisors Gaffney, Kremer, and Mike Ferreter ("Ferreter") were present at the meeting. Also included in the discussion of Duello's employment status were the Buchanan County Attorney, Allan VanderHart ("VanderHart"), and the Buchanan County Engineer, Brian Keierleber ("Keierleber"). Following discussion, Gaffney made a motion, seconded by Ferreter, to "stand by the original decision of dismissal[.]"[4] Defendants sent Duello a letter dated January 24, 2007, which provided: "After full discussion of the issues, the Board voted to stand on and not rescind its previous action."[5]

## IV. *LEGAL STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Rakes v. Life Investors Insurance Co. of America*, 582 F.3d 886, 893 (8th Cir. 2009) ("Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law."). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America,*

---

[4] *See* Defendants' Appendix (docket number 23-3) at 51.

[5] *Id.* at 52.

*Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Roeben v. BG Excelsior Ltd. Partnership*, 545 F.3d 639, 642 (8th Cir. 2008) ("To survive summary judgment, a plaintiff must substantiate his [or her] allegations with enough probative evidence to support a finding in his [or her] favor."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

Furthermore, "summary judgment is disfavored in employment discrimination cases" because such cases are "inherently fact-based." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005); *see also Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) ("'[S]ummary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based.'") (quoting *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999))). In an employment discrimination case, summary judgment should only be granted "if the evidence could not support any reasonable inference of discrimination." *Elnashar v. Speedway SuperAmerica, LLC*,

484 F.3d 1046, 1055 (8th Cir. 2007); *see also Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) ("Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.").

## V. DISCUSSION

### A. Duello's State and Federal Claims

Duello alleges disability discrimination under both the ADA and ICRA. When the parties in disability discrimination litigation "do not dispute the application of federal analysis, disability claims under the ICRA are generally analyzed in accord with the ADA." *Gretillat v. Care Initiatives*, 481 F.3d 649, 652 (8th Cir. 2007) (citing *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005); *see also Tjernagel v. Gates Corp.*, 533 F.3d 666, 671 (8th Cir. 2008) ("ADA and ICRA disability claims are analyzed under the same standards."); *Casey's General Stores, Inc. v. Blackford*, 661 N.W.2d 515, 519 (Iowa 2003) (providing that ICRA "only pronounces a general proscription against discrimination and we have looked to the corresponding federal statutes to help establish the framework to analyze claims and otherwise apply our statute"); *Schlitzer v. University of Iowa Hospitals & Clinics*, 641 N.W.2d 525, 529 (Iowa 2002) ("The common goals of the Federal ADA and our civil rights act have encouraged us to look to the federal statutory and regulatory standards in applying our statute."). Therefore, the Court will analyze both Duello's ADA and ICRA disability discrimination claims using federal law.

### B. Analytical Framework Under the ADA

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees. . . ." 42 U.S.C. § 12112(a) (2006).[6] *See also Gretillat*, 481 F.3d at 652.

---

[6] The ADA was amended by Congress through the enactment of the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009. *See* Pub. L. No. 110-325, 122 Stat. 3553. In this case, the alleged discrimination occurred in 2006 and 2007. Neither party argues for retroactive application of the amendment, and the Court

(continued...)

"As the statutory language indicates, ADA protection extends only to a qualified individual with a disability, namely, 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Peyton v. Fred's Stores of Arkansas, Inc.*, 561 F.3d 900, 902 (8th Cir. 2009) (quoting 42 U.S.C. § 12111(8)); *see also Casey's General Stores, Inc.*, 661 N.W.2d at 519 ("The [ICRA] prohibits an employer from discriminating against a qualified person with a disability because of the person's disability.").

A claim of disability discrimination under the ADA may be established either through circumstantial evidence of discrimination or through direct evidence of discrimination. *Libel v. Adventure Lands of America, Inc.*, 482 F.3d 1028, 1034 (8th Cir. 2007). A plaintiff relying solely on circumstantial evidence of discrimination under the ADA, may avoid summary judgment by "creating the requisite inference of unlawful discrimination under the *McDonnell Douglas* framework."[7] *Id.*; *see also Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010) ("'In the absence of evidence of direct discrimination, [a court] analyze[s] ADA claims under the burden-shifting framework of *McDonnell Douglas*[.]'") (quoting *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007)). If, on the

---

[6] (...continued)
determines that retroactive application is not warranted. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994) (no retroactive application of legislation if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"); *see also Haigh v. Gelita USA, Inc.*, 2009 WL 2835164 at *6, n. 11 (N.D. Iowa 2009) (retroactive application of ADAAA not warranted); *Stusse v. Von Maur, Inc.*, 2009 WL 1789379 at *3, n. 2 (D. Minn. 2009) (same).

[7] Under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 729 (1973), a plaintiff must first establish a prima facie case of discrimination. *See Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1044 (8th Cir. 2005). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment decision. *Id.* If the employer provides such a reason, then the burden shifts back to the plaintiff to present evidence that the employer's reason was mere pretext. *Id.*

other hand, a plaintiff presents direct evidence of discrimination, then the *McDonnell Douglas* burden-shifting analysis is inapplicable because "when direct evidence of discrimination exists, the plaintiff need not establish a prima facie case because creating an inference of discrimination is unnecessary." *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994) (citations omitted). Direct evidence is evidence which is "strong enough to show 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the employment decision." *Schierhoff v. GlaxoSmithkline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006) (quoting *Thomas v. First National Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)).

Duello contends that there is direct evidence that his termination was based on Defendants' mistaken belief that he was disabled; and therefore, he does not bear the burden of proving a prima facie case of disability discrimination.[8] While Duello is correct that the presentation of direct evidence renders the *McDonnell Douglas* burden-shifting analysis, including the showing of a prima facie case, inapplicable, a plaintiff alleging discrimination under the ADA must nonetheless address the threshold issue of whether he or she is a "qualified individual with a disability." *See Peyton*, 561 F.3d at 902 ("As the statutory language indicates, ADA protection extends only to a qualified individual with a disability, namely, 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'") (quotation omitted); *see also Krauel v. Iowa Methodist Medical Center*, 95 F.3d 674, 677 (8th Cir. 1996) ("The threshold requirement for coverage under the ADA is that the plaintiff be a 'qualified individual with a disability.'") (quotation omitted); *Wicks v. Riley County Board of County Commissioners*,

---

[8] A prima facie case of disability discrimination requires a plaintiff to show that he or she "(1) had a disability within the meaning of the ADA; (2) was qualified, with or without a reasonable accommodation, to perform the essential job functions of the position in question; and (3) suffered an adverse employment action because of his [or her] disability." *Lors*, 595 F.3d at 834 (citation omitted).

12 F. Supp. 2d 1282, 1289 (D. Kansas 2000) (explaining that regardless of whether a plaintiff presents direct or indirect evidence of discrimination, courts must "first determine (1) whether plaintiff is disabled and (2) whether he can, with or without reasonable accommodation, perform the essential functions of his job.") (citations omitted); *Braziel v. Loram Maintenance of Way, Inc.*, 943 F. Supp. 1083, 1097 (D. Minn. 1996) ("Unlike claims of race, age, or gender discrimination, which require only that an individual suffer an adverse employment decision because of the improper criterion, the protections encompassed by the ADA are limited to 'qualified individuals with a disability.' Thus, in order to withstand summary disposition, an ADA plaintiff must present sufficient evidence to raise a genuine issue of material fact concerning his status as 'a qualified individual with a disability.'") (citations omitted). Therefore, even though Duello contends that there is direct evidence of disability discrimination, the Court must first determine whether he meets the statutory requirements of being "a qualified individual with a disability." *See Peyton*, 561 F.3d at 902.

### 1. Disability

"Disability" is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" 42 U.S.C. § 12102(1)(A)-(C); *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 783 (8th Cir. 2006).

#### a. Actual Disability

An actual disability under the ADA is "'a physical or mental impairment that substantially limits one or more of the major life activities of an individual.'" *Samuels v. Kansas City Missouri School District*, 437 F.3d 797, 801 (8th Cir. 2006) (quoting 42 U.S.C. § 12102(1)(A)). "The impairment must be substantial, that is, considerable or to a large degree." *Id.* (citation omitted). An individual is substantially limited in a major life activity, if he or she is "unable to perform a basic function the average person in the general population can perform, or is significantly restricted in the condition, manner, or

duration under which [he or] she can perform a major life activity as compared to an average person in the general population." *Id*. (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii)). "[T]emporary impairments with little or no long-term impact are not disabilities." *Id*. at 802. In order to determine whether an individual is limited in a major life activity, courts must consider: (1) The nature and severity of the impairment; (2) the duration or anticipated duration of the impairment; and (3) the actual or expected long-term impact of the impairment. *Id*. (citation omitted).

Here, Duello was restricted from driving or operating moving machinery for six months due to a single seizure which occurred in October 2006. Because of the restrictions, Duello was unable to perform his duties as an Operator II, and arguably substantially limited in the major life activity of working. It is undisputed, however, that if Duello did not have another seizure in the six-month time period following his initial seizure, then his restrictions on driving and operating moving machinery would be lifted, and he could return to his work as an Operator II. In considering the anticipated duration of Duello's impairment, six months, and the expected long-term impact of the impairment, the Court concludes that Duello's impairment was not a disability as defined under 42 U.S.C. § 12102(1)(A), because it was temporary and unlikely to have a long-term impact on any major life activity.[9] *See* Samuels, 437 F.3d at 802 ("[T]emporary impairments with little or no long-term impact are not disabilities.").

### b. "Regarded As" Disabled

Duello contends that he is disabled under the ADA because Defendants regarded him as disabled. *See* 42 U.S.C. § 12102(1)(C). "The provision addressing perceived disabilities 'is intended to combat the effects of 'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities.'" *Brunko v. Mercy Hospital*, 260 F.3d 939, 942 (8th Cir. 2001) (quoting *Wooten v. Famland Foods*, 58 F.3d 382, 385 (8th Cir. 1995)). There are two ways in

---

[9] In response to Defendants' statement of undisputed facts, Duello agrees that he does not have an "actual disability." *See* docket number 27-2 at 14.

which an individual may be "regarded as" disabled by his or her employer: "(1) the employer mistakenly believes the individual has an impairment that substantially limits one or more major life activities, or (2) the employer mistakenly believes an actual non-limiting impairment substantially limits one or more of the individual's major life activities." *Pittari v. American Eagle Airlines, Inc.*, 468 F.3d 1056, 1061 (8th Cir. 2006) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). Major life activities include "'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 989 (8th Cir. 2007) (quoting *Conant v. City of Hibbing*, 271 F.3d 782, 784 (8th Cir. 2001)). While not explicitly argued, it appears that Duello is claiming that Defendants mistakenly believed he had an impairment which substantially limited him from the major life activity of working.

"In order to be regarded as disabled with respect to the major life activity of working, the employer must mistakenly believe that the [] impairment substantially limits the employee's ability to work." *Chalfant*, 475 F.3d at 989. Substantial limitation of the major life activity of working requires an individual to be "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.'" *Conant*, 271 F.3d at 784-85 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). "If an employer believes that an employee is unable to perform 'one specific job,' then the employee is not regarded as disabled." *Chalfant*, 475 F.3d at 989 (citation omitted); *see also Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523 (1999) ("[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job.").

Defendants argue that when they made their decision to terminate Duello, they only found him to be unable to perform his duties as an Operator II. In October 2006, Duello suffered a seizure. As a result of the seizure, Duello was restricted from driving and operating moving machinery for six months. Thus, Duello was unable to perform his duties as an Operator II. Defendants maintain that they did not believe Duello was unable

to perform other jobs, but only believed he could not perform the duties of an Operator II because he could not drive and had given up his driver's license and CDL for at least six months. Therefore, Defendants assert that because they only believed Duello was unable to perform one particular job, Operator II, Duello cannot show that Defendants regarded him as disabled with respect to the major life activity of working. *See Chalfant*, 475 F.3d at 989 ("If an employer believes that an employee is unable to perform 'one specific job,' then the employee is not regard as disabled."). Contrary to Defendants' assertions, Duello claims that Defendants did regard him as disabled because they believed he was unable to perform *any* type of job in the secondary roads department, not just the Operator II position.

On January 2, 2007, at the Buchanan County Board of Supervisors meeting, Defendants decided to terminate Duello because of a "physical disability that prevents him from carrying out his duties of employment . . . with no reasonable prospect of recovery that would enable him to resume his duties."[10] Furthermore, in Duello's termination letter, Defendants stated:

> The Buchanan County Board of Supervisors considered the issue of your continued employment and voted to terminate it because you are now unable to perform the duties of **any** function in this department and because there is not reasonable likelihood that you will recover sufficiently to perform such duties.

*See* Defendants' Appendix (docket number 23-3) at 47 (emphasis added.) It is clear that Defendants decision to terminate Duello was based on their belief that Duello's single seizure, for which he was restricted from driving or operating moving machinery for six months, to be a permanent disability limiting his ability to perform *any* type of work in the secondary roads department at the time of his termination or at any time in the future.

Furthermore, in his deposition, Supervisor Kremer testified regarding the various jobs and duties performed by the secondary roads department:

---

[10] *See* Defendants' Appendix (docket number 23-3) at 46.

Q: Tell me how familiar are you with the operator positions in the secondary road department?

A: How familiar -- what job they do?

Q: Yeah; can you tell me what they do?

A: Yes; the main job would be operating their road maintainer and applying rock to the roads as needed. We have limits on what they can put on. We used to put all the rock on, but we contract people to put on the rock in each area, and operators have to level the rock. They'd be responsible to let us know when signs are missing and things like that. They may have to work together on some other projects like paving repair, things like that.

Q: Mr. Keierleber, yesterday, also mentioned things like cutting brush or cutting trees in the ditches.

A: That could be one of them, yes, many, many jobs.

Q: So that would be a crew-type job where there would be more than one person?

A: Yes. We don't recommend that nobody cut brush or trees alone. . . .

Q: Some of the other duties listed on Exhibit 1 include things like -- I'll let you lat at that. I'll look at mine. Routine maintenance on machinery, would you agree that they do that?

A: Yes.

Q: Put up barricades, snow fences, you agree that they do those things?

A: Yes.

Q: Perform tasks in maintaining shops, servicing cars, trucks and other assigned equipment, would agree they do those?

A: Yes.

Q: Assist and repair and replace culverts, is that a team effort?

A: Yes.

Q: So it wouldn't be just one individual doing that?

A: No, it would take more than one person to do it. . . .

Q: Within the secondary road department, there are other jobs besides operators; is that correct?

A: Yes.

Q: So, for example, there's a mechanic in the shop?

A:      Yes.

Q:      There's a maintenance or janitorial person in the shop?

A:      Yes. . . .

Q:      What other jobs are there?

A:      We have a bridge crew that would be building small bridges. . . .

Q:      That would be a crew of people?

A:      Three -- two to three people normally work on that there.

*See* Defendants' Appendix (docket number 23-3) at 25-26; Kremer's Deposition at 31:3-33:24.

Duello argues that Defendants' belief that he was unable to perform the duties of *any* function in the secondary road department, including non-driving functions such as repairing pavement, cutting brush or trees, putting up barricades or snow fences, servicing cars, performing maintenance, janitorial duties, and mechanic duties, does not support Defendants' argument that the decision to terminate him was limited to only his ability to perform the duties of an Operator II. The Court agrees, and having viewed the record in the light most favorable to Duello, the Court finds that there is a genuine issue of material fact as to whether Defendants mistakenly believed that Duello's six-month restrictions on driving and operating moving machinery constituted a permanent disability which substantially limited his ability to work. *See Chalfant*, 475 F.3d at 989 ("In order to be regarded as disabled with respect to the major life activity of working, the employer must mistakenly believe that the [] impairment substantially limits the employee's ability to work.").

### 2.    *Qualified Individual*

It is not enough, however, that Duello establish that he was terminated from his employment because Defendants regarded him as disabled; to avoid summary judgment he must also generate a genuine issue of fact regarding whether he was a "qualified individual" when he was fired. The ADA defines the term "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential

functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also *Heaser v. Toro Co.*, 247 F.3d 826, 830 (8th Cir. 2001) (In order to be a qualified individual under the ADA, a plaintiff must "(1) possess the requisite skill, education, experience, and training for [his or] her position; and (2) be able to perform the essential job functions, with or without reasonable accommodation."). Here, Duello claims that he could have worked at jobs within the department that did not require a driver's license, or Defendants could have granted him a leave of absence. Generally, when an employee claims that he or she "is able to perform the essential functions of the job with a reasonable accommodation, the employee 'must only make a "facial showing that a reasonable accommodation is possible."'" *Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008) (quoting *Fenney v. Dakota, Minnesota & Eastern R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003), in turn quoting, *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1985)). If the employee makes the requisite facial showing, then the burden is on the employer to show that it is unable to accommodate the employee. *Brannon*, 521 F.3d at 848.

In *Weber v. Strippit, Inc.*, 186 F.3d 907 (8th Cir. 1999), however, the Eighth Circuit Court of Appeals held that "'regarded as' disabled plaintiffs are not entitled to reasonable accommodations" because the "ADA cannot reasonably have been intended to create a disparity in treatment among impaired but non-disabled employees, denying most the right to reasonable accommodations but granting to others, because of their employers' misperceptions, a right to reasonable accommodations no more limited than those afforded actually disabled employees." *Id.* at 917; *see also Finan v. Good Earth Tools, Inc.*, 565 F.3d 1076, 1080 (8th Cir. 2009) ("Good Earth is correct that an employee who is 'regarded as disabled' is not entitled to a reasonable accommodation."); *Kaplan v. N. Las Vegas*, 323 F.3d 1226, 1233 (9th Cir. 2003) ("[W]e hold that there is no duty to accommodate an employee in an 'as regarded' case."); *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999) (Without explaining its reasoning, the Sixth Circuit noted that the defendant correctly contended that a defendant company is not obligated to

reasonably accommodate a "regarded as" disabled plaintiff); *Newberry v. East Texas State University*, 161 F.3d 276, 280 (5th Cir. 1998) ("[A]n employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment."). The Third and Eleventh Circuit Courts of Appeals, however, have parted ways with the Fifth, Sixth, Eighth, and Ninth Circuit Courts, and have held that individuals who are "regarded as" being disabled are entitled to reasonable accommodations under the ADA. *See Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 772-76 (3d Cir. 2004) (Concluding that "'regarded as' employees under the ADA are entitled to reasonable accommodation in the same way as are those who are actually disabled."); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1239 (11th Cir. 2005) ("[W]e hold that an individual falling within the 'regarded as' category of disability under the ADA is entitled to a reasonable accommodation no less than an individual satisfying the actual impairment definition of disability.").

Because of the Circuit split, the Court deems it appropriate to further explicate the Eighth Circuit's reasoning in *Weber*. The plaintiff in *Weber*, suffered a heart attack and was hospitalized on several occasions over a two-year period due to his heart condition. 186 F.3d at 910. During this time period, the plaintiff continued to perform his job duties. *Id*. Also during this time period the defendants informed the plaintiff that he might have to be relocated from Minnesota to Akron, Ohio. *Id*. Approximately six months after informing the plaintiff about the possibility of relocating to Akron, the defendants informed the plaintiff that he was required to relocate to Akron. *Id*. Eventually,

> [d]efendants . . . ordered [the plaintiff] to either relocate to Akron or, if he was unwilling to leave Minnesota, to accept a position as a domestic sales engineer at a much lower salary. [The plaintiff] told defendants that his doctor advised him to remain in Minnesota for six months for medical reasons prior to relocating. Defendants refused to wait the six months and, . . . [the plaintiff] was either terminated or abandoned his employment.

*Id.* The plaintiff proceeded to trial on a perceived disability claim, and a jury returned a verdict for the defendants. *Id.* On appeal, the plaintiff argued that the district court erred by failing to give a "reasonable accommodation" instruction. *Id.* at 915. Specifically, the plaintiff argued that "an employer is liable under the ADA where it fails to reasonably accommodate either an actual or a perceived disability." *Id.* The district court rejected the plaintiff's argument, and concluded that "an employer need only accommodate actual disabilities and, because the court granted judgment as a matter of law on [the plaintiff's] actual disability claim, no reasonable accommodation instruction was required." *Id.* at 915-16. The Eighth Circuit agreed with the district court and explained its holding that "regarded as" disabled plaintiffs are not entitled to reasonable accommodations as follows:

> The reasonable accommodation requirement is easily applied in a case of actual disability. Where an employee suffers from an actual disability, the employer cannot terminate the employee on account of the disability without first making reasonable accommodations that would enable the employee to continue performing the essential functions of his job. . . . This application of the reasonable accommodation requirement is perfectly consistent with the ADA's goal of protecting individuals with disabling impairments who nonetheless can, with reasonable efforts on the part of their employers, perform the essential functions of their jobs.

> The reasonable accommodation requirement makes considerably less sense in the perceived disability context. Imposing liability on employers who fail to accommodate non-disabled employees who are simply regarded as disabled would lead to bizarre results. Assume, for instance, that [the plaintiff's] heart condition prevented him from relocating to Akron but did not substantially limit any major life activity. Absent a perceived disability, defendants could terminate [the plaintiff] without exposing themselves to liability under the ADA. If the hypothetical is altered, however, such that defendants mistakenly perceive [the plaintiff's] heart condition as substantially limiting one or more major life activities, defendants would be required to reasonably accommodate [the plaintiff's] condition by, for instance, delaying his relocation

> to Akron. Although [the plaintiff's] impairment is no more severe in this example than in the first, [the plaintiff] would now be entitled to accommodations for a non-disabling impairment that no similarly situated employees would enjoy.

*Id.* at 916.

Because Duello is claiming that Defendants regarded him as disabled – rather than him suffering from an actual disability – under Eighth Circuit law, he can only satisfy the ADA's "qualified individual" requirement by showing that he could perform the essential functions of his job without an accommodation. *See Weber*, 186 F.3d at 917. It is undisputed that at the time of his termination, Duello was unable to perform the essential function of his job, namely the ability to drive. Due to his seizure, Duello was restricted from driving for at least six months.[11] Because Duello was unable to perform the essential functions of his job without reasonable accommodation at the time of his termination, he is not a "qualified individual" under the ADA. Therefore, Duello is not protected under the ADA, and Defendants are entitled to summary judgment on Duello's claims of disability discrimination. *See Peyton*, 561 F.3d at 902 ("As the statutory language indicates, ADA protection extends only to a qualified individual with a disability, namely, 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'") (quotation omitted).

## VI. CONCLUSION

Because Duello was not a qualified individual under the ADA at the time of his termination, he was not protected under the ADA. Therefore, the Court concludes that Defendants are entitled to summary judgment. Defendants' motion for summary judgment is granted.

_____

[11] In his brief, Duello spends time arguing that having a CDL was not an essential function of his job. The Court finds Duello's argument misplaced. Regardless of whether having a CDL or any other special license is necessary for the Operator II position, a valid driver's license is essential for an Operator II because an Operator II's primary job duties involve driving a maintainer and dump truck.

*VII.  ORDER*

**IT IS THEREFORE ORDERED AS FOLLOWS**:

1.     The Motion for Summary Judgment (docket number 23) filed by Defendants is hereby **GRANTED**.

2.     The Complaint (docket number 1) filed by Plaintiff on February 5, 2008, is hereby **DISMISSED**.

DATED this 14th day of April, 2010.

_____

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA